**No. 09–99026; 10–99007; 20–99002**

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

EUGENE ALLEN DOERR,

*Petitioner-Appellant/Cross-Appellee,*

v.

DAVID SHINN, ET AL.,

*Respondents-Appellees/Cross-Appellants*.

On Appeal from the United States District Court
for the District of Arizona
No. 2:02-cv-00528-JJT
Hon. John J. Tuchi

_____

## RESPONDENTS-APPELLEES/CROSS-APPELLANTS'
## PETITION FOR REHEARING EN BANC

_____

Kristin K. Mayes
Attorney General
(Firm State Bar No. 14000)

Daniel C. Barr
Chief Deputy Attorney General
(State Bar No. 10149)

Jason D. Lewis
Deputy Solicitor General/
Section Chief of Capital Litigation
(State Bar Number 032461)

Jason P. Gannon
Assistant Attorney General
Capital Litigation Section
400 W. Congress, Bldg. S-215
Tucson, Arizona 85701
Telephone: (520) 628-6520
Jason.Gannon@azag.gov
CLDocket@azag.gov
(State Bar No. 34465)

*Attorneys for Respondents-Appellees/
Cross-Appellants*

**TABLE OF CONTENTS**

PAGE

TABLE OF CONTENTS.................................................................................2

TABLE OF AUTHORITIES .........................................................................3

RULE 40(B)(2) STATEMENT .....................................................................5

STATEMENT OF THE CASE......................................................................6

ARGUMENT ...............................................................................................9

    I.      The panel majority misapplied concepts of procedural default and technical exhaustion by misinterpreting Arizona's state rules of preclusion. .................................................................9

CONCLUSION............................................................................................21

CERTIFICATE OF COMPLIANCE............................................................22

CERTIFICATE OF SERVICE .....................................................................23

Page(s)

**Federal Cases**

*Blake v. Baker*, 745 F.3d 977 (9th Cir. 2014) ...................................................... 10
*Coleman v. Thompson*, 501 U.S. 722 (1991) .............................................. 5, 11, 20
*Doerr v. Shinn*, --- F.4th ---, 2025 WL 4706750 (9th Cir. May 4, 2026) 8, 9, 15, 16, 17, 18, 20
*Doerr v. Shinn*, 127 F.4th 1162 (9th Cir. 2025) ................................................. 7, 8
*Gulbrandson v. Ryan*, 738 F.3d 976 (9th Cir. 2014) .................................. 5, 20, 21
*Hurles v. Ryan*, 752 F.3d 768 (9th Cir. 2014) ................................................. 5, 21
*Johnson v. Zenon*, 88 F.3d 828 (9th Cir. 1996) ................................................. 11
*King v. Ryan*, 564 F.3d 1133 (9th Cir. 2009) ..................................................... 11
*McCoy v. Louisiana*, 584 U.S. 414 (2018) ......................................................... 18
*McKinney v. Ryan*, 813 F.3d 798 (9th Cir. 2015) ................................................ 7
*Murray v. Carrier*, , 477 U.S. 478, 496 (1986) ................................................. 11
*New York v. Hill*, 528 U.S. 110 (2000) ............................................................... 18
*Rhines v. Weber*, 544 U.S. 269 (2005) ...................................................... 5, 10, 20
*Rose v. Lundy*, 455 U.S. 509 (1982) ................................................................... 10
*Shinn v. Ramirez*, 596 U.S. 366 (2022) ....................................................... 10, 11
*Tong v. Lumpkin*, 90 F.4th 857 (5th Cir. 2024) ............................................. 5, 19
*Weisheit v. Neal*, 151 F.4th 855 (7th Cir. 2025) ........................................... 5, 19

**State Cases**

*State v. Anderson*, 547 P.3d 345 (Ariz. 2024) ............................................. 12, 14
*State v. Diaz*, 340 P.3d 1069 (Ariz. 2014) .............................................. 12, 13, 16
*State v. Doerr*, 969 P.2d 1168 (Ariz. 1998) ........................................................ 6
*State v. Lee*, 689 P.2d 153 (Ariz. 1984) ............................................................. 18
*State v. Montoya*, 554 P.3d 473 (2024) .............................................................. 17
*State v. Poland*, 698 P.2d 183 (Ariz. 1985) ...................................................... 14
*State v. Traverso*, 576 P.3d 97 (Ariz. 2025) ....................... 8, 12, 13, 14, 16, 17, 18

**Federal Statutes**

28 U.S.C. § 2254(b)(1)(A) ........................................................................... 11, 20

28 U.S.C. § 2254(e)(1).................................................................................. 6

**State Rules**

Ariz. R. Crim. P. 32.11(a) ........................................................................ 14
Ariz. R. Crim. P. 32.2(a)(3) ............................................................. 8, 12, 15
Ariz. R. Crim. P. 32.4(b)(3)(A) ............................................................... 15
Ariz. R. Crim. P. 32.4(b)(3)(D) ......................................................... 15, 18
Ariz. R. Crim. P. 32.4(c)(1) ..................................................................... 18

# RULE 40(B)(2) STATEMENT

A rehearing en banc is necessary for the following reasons:

1.	The panel decision conflicts with decisions of this court to which the petition is addressed and the full court's consideration is therefore necessary to secure or maintain uniformity of the court's decisions:

    a.	*Gulbrandson v. Ryan*, 738 F.3d 976 (9th Cir. 2014)

    b.	*Hurles v. Ryan*, 752 F.3d 768 (9th Cir. 2014)

2.	The panel's decision conflicts with decisions of the United States Supreme Court:

    a.	*Rhines v. Weber*, 544 U.S. 269 (2005)

    b.	*Coleman v. Thompson*, 501 U.S. 722 (1991)

3.	The panel decision conflicts with an authoritative decision of another United States court of appeals

    a.	*Weisheit v. Neal*, 151 F.4th 855 (7th Cir. 2025)

    b.	*Tong v. Lumpkin*, 90 F.4th 857 (5th Cir. 2024)

4.	The panel decision involves a question of exceptional importance:

    a.	Does a federal court have the authority to analyze a State procedural bar to determine if the State would apply the procedural bar to the defendant's case?

**STATEMENT OF THE CASE**

On September 30, 1994, the Maricopa County grand jurors indicted Doerr for Count I, first degree murder, a class 1 felony; Count II, sexual assault, a class 2 felony; and Count III, kidnapping, a class 2 felony, and on April 15, 1996, a jury convicted him as charged. The facts underlying Doerr's convictions and sentences, which are presumed correct under 28 U.S.C. § 2254(e)(1), can be found in the Arizona Supreme Court's opinion on direct review. *See State v. Doerr* (*Doerr I*), 969 P.2d 1168, 1171–73, ¶¶ 1–12 (Ariz. 1998). Doerr was convicted and sentenced to death for the horrific murder of Karen Bohl.

The Arizona Supreme Court rejected Doerr's claims on direct review and affirmed the death sentence after conducting an independent review. (ER[1] Vol. 1 at 206–244); *Doerr I*, 969 P.2d at 1184, ¶ 79. On April 23, 1999, the United States Supreme Court denied Doerr's subsequent petition for writ of certiorari. (*Id.* at 205.)

Doerr then filed a petition for postconviction relief, raising several claims, including ineffective assistance (IAC) of trial and appellate counsel. (ER Vol. 10 at 2699–770.) The postconviction court dismissed Doerr's petition for post-

---

[1] Respondents cite the ER filed on 2/01/2022 by petitioner Doerr, case number 09-99026, Dkt. 81.

conviction relief. (ER Vol. 1 at 199–202.) Doerr sought review of the postconviction court's denial, but the Arizona Supreme Court summarily denied Doerr's petition. (*Id.* at 198.)

On July 30, 2003, Doerr filed a First Amended Petition for Writ of Habeas Corpus in the United States District Court for the District of Arizona, raising a number of claims. (ER Vol. 9 at 2597–675; ER Vol. 10 at 2677–98.) After several remands from this court, the district court granted habeas relief on Doerr's *McKinney*[2] claim and denied relief on all the remaining claims.

After a three-judge panel held oral argument on May 23, 2024, the panel directed the parties to submit supplemental briefing to address whether a claim is technically exhausted if the state court could waive the procedural bar and whether a *Rhines* stay applies to an ineffective assistance of counsel (IAC) claim that was not raised due to PCR counsel's alleged ineffectiveness. Dkt. # 128, at 1–2.[3]

Following supplemental briefing by the parties, *see* Dkt. # 133 and Dkt. # 132, the panel issued its opinion on January 29, 2025. *See* Dkt. # 139; *Doerr v. Shinn* ("*Doerr II*"), 127 F.4th 1162 (9th Cir. 2025). Respondents then petitioned this Court for rehearing en banc. Dkt. # 144.

_____

[2] *McKinney v. Ryan*, 813 F.3d 798 (9th Cir. 2015).
[3] Docket citations refer to case number 09-99026.

After issuing its decision in *Doerr II* and while the petition for en banc rehearing was pending, the panel ordered the parties to file supplemental briefing addressing the Arizona Supreme Court's decision in *State v. Traverso*, 576 P.3d 97 (Ariz. 2025) and its application to Doerr's case. Dkt. # 150. The parties filed their supplemental briefs on December 8, 2025. Dkt. # 153, Dkt. # 155. The panel issued its superseding amended opinion and dissent on May 4, 2026. *See* Dkt. # 157; *Doerr v. Shinn* (*Doerr III*), --- F.4th ---, 2025 WL 4706750 (9th Cir. May 4, 2026).

In its amended opinion, the panel majority noted the narrow exceptions Arizona created to waiver and preclusion through its rules and caselaw.[4] *Doerr III*, 2025 WL 4706750, at *7–10. After noting the existence of these narrow exceptions, the majority stated that "we cannot be sure what an Arizona court will do when asked to entertain Doerr's second PCR petition in which he asserts for the first time an IAC claim at sentencing." *Id.* at *9. In the majority's estimation, the mere existence of exceptions to Arizona's preclusion rules eliminate certainty as to whether the state courts would conclusively find a claim precluded or not. *Id.* Lacking such certainty, the majority stated that the principles of federalism and

_____

[4] Rule 32.2 precludes claims that were waived on direct appeal or a prior PCR petition. This type of preclusion would apply to Doerr's successive IAC claims. Ariz. R. Crim. P. 32.2(a)(3).

comity prevented them from determining Arizona law and that federal courts must allow the state courts to first pass on the question. *Id.* at \*10.

But the panel majority has invariably weakened the important concepts of procedural default and technical exhaustion with its hollow invocation of federalism and comity. Under the majority's reasoning, the existence of *any* exception to a state's rules of procedural default implicate *Rhines* and call for a stay. This is not the procedure envisioned by the Court in crafting the narrow mechanism through which habeas petitioners may return to state court to present truly unexhausted claims

Because the majority's interpretation of Arizona's preclusion rules render concepts of procedural default and technical exhaustion a nullity, this Court should grant en banc rehearing.

## ARGUMENT

I. **The panel majority misapplied concepts of procedural default and technical exhaustion by misinterpreting Arizona's state rules of preclusion.**

The majority misapplied concepts of procedural default and technical exhaustion when it granted Doerr's request for a *Rhines* stay based on whether a narrow exception to preclusion could apply. The majority failed to analyze whether Doerr would qualify for any exception under Arizona law, and also failed to address whether Doerr's claims would be summarily dismissed as untimely.

9

These errors require en banc intervention to avoid unwarranted delay in this case and many others.

### A. Rhines v. Weber.

"[F]ederal district courts may not adjudicate mixed petitions for habeas corpus, that is, petitions containing both exhausted and unexhausted claims." *Rhines v. Weber*, 544 U.S. 269, 273 (2005) (citing *Rose v. Lundy*, 455 U.S. 509, 518–19 (1982)). In "limited circumstances," however, a district court may stay habeas proceedings when a petitioner files a mixed habeas petition to allow the petitioner to exhaust the claim in state court. *Id.* at 277. This discretion should be exercised cautiously, as "granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts." *Id.* Additionally, "routinely granting stays would undermine the AEDPA's goals of encouraging finality and streamlining federal habeas proceedings." *Blake v. Baker*, 745 F.3d 977, 981–82 (9th Cir. 2014). And "a federal habeas court may *never* 'needlessly prolong' a habeas case." *Shinn v. Ramirez*, 596 U.S. 366, 390 (2022) (emphasis in original).

Under *Rhines*, stay and abeyance is appropriate only where the petitioner has shown: (1) "good cause" for the failure to exhaust his claims in state court; (2) the unexhausted claim is "potentially meritorious"; and (3) the petitioner did not engage in "intentionally dilatory litigation tactics." 544 U.S. at 277. Moreover, "[a] mixed petition should not be stayed indefinitely." *Id*. The *Rhines* procedure

for staying a petition applies only to mixed petitions containing both exhausted and unexhausted claims. *See King v. Ryan*, 564 F.3d 1133, 1139–40 (9th Cir. 2009) (*Rhines* exception to total-exhaustion rule allowed mixed petitions to remain pending in federal court under limited circumstances).

**B.      Exhaustion, Procedural Default, and Technical Exhaustion.**

Federal courts may not grant a writ of habeas corpus unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). A claim is exhausted if: (1) it has been fairly presented to the highest state court with jurisdiction to consider it; or (2) no state remedy remains available for the claim. *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996). The latter form of exhaustion is described as "technical exhaustion." *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991) ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him."). A claim is procedurally defaulted when the state court would dismiss the claim because the defendant did not present it in a procedurally proper manner. *Ramirez*, 596 U.S. at 371. A default in federal habeas proceedings may be excused only if "a constitutional violation has probably resulted in the conviction of one who is actually innocent," or if the petitioner demonstrates cause for the default and prejudice resulting from it. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

11

### C.     Arizona state rules of procedural default.

Arizona requires defendants to "'raise all known claims for relief in a single petition to prevent endless trial-court reviews of the same case,' especially involving IAC claims." *State v. Traverso*, 576 P.3d 97, 107, ¶ 42 (Ariz. 2025) (quoting *State v. Anderson*, 547 P.3d 345, 350, ¶ 21 (Ariz. 2024).  Arizona Rule of Criminal Procedure 32.2(a)(3) requires preclusion of all claims "waived at trial or on appeal, or in any previous post-conviction proceeding."  However, there are narrow exceptions to this rule.

Waiver preclusion does not apply "when the claim raises a violation of a constitutional right that can only be waived knowingly, voluntarily, and personally by the defendant."  Ariz. R. Crim. P. 32.2(a)(3).  "PCR counsel can waive most claims of trial error on the defendant's behalf by failing to assert them in a PCR petition."  *State v. Diaz*, 340 P.3d 1069, 1070, ¶ 8 (Ariz. 2014).  "Only a narrow category of rights is of sufficient constitutional magnitude to require a defendant's knowing, voluntary, and personal waiver for purposes of Rule 32.2(a)(3)." *Traverso*, 576 P.3d at 105, ¶ 36.  Arizona has identified a limited number of rights that require a personal waiver, such as "rights to counsel, to a jury trial, and to a twelve-person jury" and the "right to be sufficiently informed of the prosecution's plea offer to decide whether to accept it, plead guilty, and waive a jury trial." *Id.* at 105, 107, ¶¶ 36, 41.  To avoid waiver preclusion for a successive IAC claim, the

defendant must show the right implicated by the defendant's IAC claim requires a knowing, voluntary and personal waiver by the defendant. *Traverso*, 576 P.3d at 106–107 ¶ 40. The magnitude of counsel's failure, as implicated by the specific constitutional right, should factor into a court's analysis of the specific right. *Id.*

The Arizona Supreme Court has also created a narrow "unusual circumstances" exception through their decisions in *Diaz* and *Anderson*. However, the "unusual circumstances" exception applies only to the unique facts and circumstances of those cases. *Traverso*, 576 P.3d at 105, 107, ¶¶ 33–35, 41, n.12.

In *Diaz*, two different PCR counsel both filed a PCR notice but did not file a petition. *Traverso*, 576 P.3d at 105, ¶ 33. The PCR court dismissed both notices. *Id.* Diaz, now on his third attorney, eventually filed a third notice and his first PCR petition. *Id.* The PCR court summarily dismissed the petition, finding the defendant waived the IAC claim because he did not raise it in a previous petition. *Id.* The Arizona Supreme Court granted review to consider the waiver issue. *Id.* at ¶ 34. The lack of a previous petition meant that the preclusion rule governing waiver did not apply, which in turn meant that the court need not consider whether the defendant's IAC claim was of a sufficient constitutional magnitude to warrant an exception to the preclusion rules. *Id.* at ¶ 35. The Arizona Supreme Court limited *Diaz* to its particular facts, noting that "*Diaz* was ultimately decided on the

basis that no PCR petition asserting an IAC claim had ever been filed until his third notice of PCR." *Id.*

"*Anderson* concerned a successive IAC claim in which the defendant asserted 'that [the defendant's counsel] erroneously advised him that he was parole eligible, which caused him to reject an allegedly offered plea agreement.'" *Id.* at 107, ¶ 41, n.12 (quoting *Anderson*, 547 P.3d at 348, ¶ 1) (alterations in original). The court held that the defendant's successive IAC claim was not known to the defendant before he filed his successive PCR petition due to the pervasive confusion on parole availability at the time of his prior PCR petitions. *Anderson*, 547 P.3d at 351–52, ¶ 26. The *Traverso* court "limit[ed] the reasoning and holding of *Anderson* to its facts." *Traverso*, 576 P.3d at 107, ¶ 41, n. 12; *see also State v. Poland*, 698 P.2d 183, 194 (Ariz. 1985), *aff'd*, 476 U.S. 147 (1986) (noting prior opinion "was limited to the peculiar facts of that case" and refusing to apply it when "peculiar facts of [prior case] were not present in the instant case"). Thus, the narrow exception to preclusion created by *Anderson* only applies when a case mirrors the circumstances in *Anderson*.

In addition to waiver preclusion, Arizona requires defendants to file their claims in a timely manner or face summary dismissal. Ariz. R. Crim. P. 32.11(a). An untimely claim can by itself justify summary dismissal. *Traverso*, 576 P.3d at 107, ¶ 42. For claims raising a constitutional violation, such as an IAC claim, the

defendant must file a PCR notice "within 90 days after the oral pronouncement of sentence or within 30 days after the issuance of the mandate in the direct appeal, whichever is later." Ariz. R. Crim. P. 32.4(b)(3)(A). A court may excuse the untimeliness under this rule only "if the defendant adequately explains why the failure to timely file a notice was not the defendant's fault." Ariz. R. Crim. P. 32.4(b)(3)(D).

**D.** **The panel majority wrongly granted Doerr's request for stay and abeyance pursuant to *Rhines*.**

Under the guise of federalism and comity, the majority declined to give effect to Arizona's preclusion rules because "it is not clear whether the Arizona courts would hold that Doerr's penalty-phase IAC claim is precluded under Rule 32.2(a)(3)." *Doerr III*, 2025 WL 4706750, at *6. To support this holding, the majority summarized *Diaz*, *Anderson*, and *Traverso*. *Id.* at *7–10. Each addressed Rule 32.2(a)(3) preclusion. Although the majority summarized these cases, they did not analyze whether the specific exceptions in *Diaz* and *Anderson* apply to Doerr's case. *Id.* at *9–10. Neither did they identify the constitutional right implicated by Doerr's IAC claim that requires a knowing, voluntary, and personal waiver. *Traverso* requires this determination before applying the exception to waiver preclusion. Judge Forrest's analysis of the exceptions correctly found that Doerr's IAC claims do not fall within them. *Id.* at *15–18 (Forrest, J. dissenting).

15

In *Diaz*, the defendant did not file his first *petition* until after filing his third *notice*. "Thus, *Diaz* was ultimately decided on the basis that no PCR petition asserting an IAC claim had ever been filed until his third notice of PCR." *Traverso*, 576 P.3d at 105, ¶ 35. The *Diaz* court also stated that the preclusion rules would apply to any successive PCR petition the defendant filed in the future. *Diaz*, 340 P.3d at 1071, ¶ 12. Doerr has previously filed a PCR petition, which the panel acknowledged. ("Doerr filed his first petition for postconviction relief ('PCR') in Arizona state court in September 2000.") *Doerr III*, 2025 WL 4706750, at *3. Thus, the limited *Diaz* exception does not apply to Doerr's case.

The Arizona Supreme Court limited *Anderson*'s holding to its facts and reasoning. *Traverso*, 576 P.3d at 107, ¶ 41, n. 12. This requires that the same facts and circumstances in *Anderson* must exist in Doerr's case for *Anderson* to apply. Despite the majority's summary of *Anderson*, they made no effort to compare the facts in *Anderson* to Doerr's case. The issue in *Anderson* addressed a defendant's rejection of a plea based on trial counsel's incorrect advice on the availability of parole, which Anderson did not learn of until prison officials informed him that he was ineligible for parole. Doerr did not reject a plea offer based on the mistaken belief that parole would be available. Thus, *Anderson* does not apply to Doerr's case.

The majority also missed the thrust of *Traverso*. *See Doerr III,* 2025 WL 4706750, at *15 (Forrest J. dissenting). The *Traverso* court provided a clear and workable framework for determining whether an Arizona court would treat an IAC claim in a successive petition as waived and precluded. The court stated that a successive IAC claim is not precluded if the IAC claim reflects a right that requires a knowing, voluntary, and personal waiver by the defendant. *See Traverso,* 576 P.3d at 107, ¶ 41. Instead of examining Doerr's IAC claims to determine if they implicated such a right, the majority instead focused on the alleged IAC of Doerr's PCR counsel and compared it to the IAC of the trial counsel in *Traverso*. *Doerr III*, 2025 WL 4706750, at *9–10. The majority opinion does not identify the constitutional right implicated by Doerr's penalty phase IAC claims, much less consider whether this right is so personal to the defendant that it would require a knowing, voluntary, and personal waiver. *See id.* at *15–17 (Forrest, J. dissenting).

Doerr's IAC claims do not allege a violation of a right that requires a knowing, voluntary, and personal waiver. Judge Forrest addressed this issue in her dissent:

> The Constitution does not require that a sentencer "be presented with all possibly mitigating evidence in existence." *State v. Montoya*, … 554 P.3d 473, 506 (2024). Nor does it provide Doerr the right to direct the strategic decisions around his defense counsel's "investigation and presentation" of mitigating evidence such that his failure to waive that right in his guilt-phase postconviction proceeding might preserve his

17

> ability to bring a separate sentencing-phase IAC claim now. *See New York v. Hill*, 528 U.S. 110 … (2000). As the *Traverso* court recognized, defendants retain "[t]he ultimate decisions" as to whether to plead guilty, waive a jury trial, and testify. 576 P.3d at 106 (alteration in original) (quoting [*State v. ]Lee*, 689 P.2d [153,] 158 [(Ariz. 1984)]); *see also McCoy*[ *v. Louisiana*], 584 U.S. [414,] 421–22 … [(2018)]. But "strategic choices about how best to *achieve* a client's objectives" are for the lawyer to make. *McCoy*, 584 U.S. at 422 ….

*Id.* at \*15 (Forrest, J. dissenting). Trial counsel's strategic decisions during Doerr's penalty phase do not implicate a constitutional right of such significance it requires his knowing, voluntary and personal waiver. Thus, Arizona considers the penalty phase IAC claim precluded.

Respondents argued in their second supplemental brief that Doerr's claims were untimely. Dkt. #161 at 12. However, both the majority and the dissent failed to consider this additional procedural bar. Doerr's IAC claims are untimely by several decades and he cannot adequately explain why the delay is not his fault. *See* Ariz. R. Crim. P. 32.4(b)(3)(D). After the denial of his first PCR petition, Doerr could have filed a pro se PCR notice raising these claims and Arizona would have appointed him counsel to represent him for his successive petition. *See* Ariz. R. Crim. P. 32.4(c)(1) (2001) (requiring the appointment of counsel to represent capital defendants in successive PCRs). Rather than present this claim to the State court decades ago, Doerr instead decided to seek relief in Federal Court. Doerr's decision does not adequately explain the decades' long delay in bringing the claim,

and it is accordingly untimely under Arizona law. Thus, it is procedurally defaulted.

The panel majority decision also conflicts with an authoritative decision of another United States court of appeals. In *Tong v. Lumpkin*, 90 F. 4th 857 (5th Cir. 2024), the Fifth Circuit upheld the district court's denial of a *Rhines* stay. *Tong*, 90 F.4th at 863–65. There, the defendant argued that it was unclear whether a Texas court would find his claim procedurally barred. *Id.* at 864. The basis for this argument came from dicta in a Texas opinion that supported the defendant's position. *Id.* at 864–65. Although the Fifth Circuit acknowledged ambiguity existed in the procedural bar because of the dicta, it affirmed the denial of the *Rhines* stay. *Id.* It found that the defendant was asking the court to "find this claim potentially meritorious to allow the [Texas court] to revisit its precedent," which the court held were "not sufficient grounds for a *Rhines* stay." *Id.* at 864. In *Weisheit v. Neal*, 151 F.4th 855 (7th Cir. 2025), the Seventh Circuit applied Indiana's procedural bars to the defendant's claims before the defendant filed his successive petition for postconviction relief during its *Rhines* stay analysis. *Weisheit*, 151 F.4th at 868–71. It denied the Rhines stay because there was "no avenue for Indiana to correct his alleged violations consistent with its own procedures." *Id.* at 871. The majority's failure to apply Arizona's procedural bars conflicts with these two cases.

The panel majority's failure to analyze Arizona's procedural bars to Doerr's claims violates the principles of technical exhaustion and procedural default. Judge Forrest aptly explains the broader impact of the majority's decision: "the very concept of technical exhaustion requires federal courts to analyze how state courts would handle claims that were *not* presented to them." *Doerr III*, 2025 WL 4706750, at *17 (Forrest, J. dissenting) (emphasis in original) (citing *Coleman*, 501 U.S. at 735 n.1; *Gulbrandson v. Ryan*, 738 F.3d 976, 992 (9th Cir. 2014)). Under the majority's interpretation, the existence of exceptions in a state's postconviction regime means that no claim can truly be technically exhausted.

Procedural default and technical exhaustion are critical concepts in carrying out the intent of AEDPA. *See* 28 U.S.C. 2254(b)(1)(A). Therefore, the majority's decision reaches past *Rhines*. If, as the majority asserts, "we should ask rather than tell the state court how it will rule on a question of state law," *Doerr III*, 2025 WL 4706750 at *10, then a broad swath of claims are no longer technically exhausted and the federal courts will again be faced with the thorny question of what to do with truly mixed petitions. *See Rhines*, 544 U.S. at 278–79. This is an unwarranted departure from this Court's prior recognition that it "routinely h[o]ld[s] that IAC claims newly raised in federal habeas petitions are procedurally defaulted *and technically exhausted*." *Doerr III*, 2025 WL 4706750, at *13

(Forrest, J. dissenting) (emphasis in original) (citing *Hurles v. Ryan*, 752 F.3d 768, 779–90 (9th Cir. 2014); *Gulbrandson*, 738 F.3d at 993).

## CONCLUSION

Because the panel majority declined to answer the straightforward question of how the Arizona courts would apply state procedural bars, it inappropriately granted Doerr a *Rhines* stay.  En banc rehearing is appropriate to correct the panel majority's misguided reasoning.

Respectfully submitted,

Kristin K. Mayes
Attorney General

Jason D. Lewis
Deputy Solicitor General /
Section Chief of Capital Litigation

/s/ Jason P. Gannon
Assistant Attorney General

*Attorneys for Respondents-Appellees/*
*Cross-Appellants*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rules of Appellate Procedure Rule 40-1 of the Ninth Circuit Court of Appeals, I certify that this brief is proportionately spaced, has a typeface of 14 points or more and contains 3,863 words and 17 pages of text.

s/ Jason P. Gannon
Assistant Attorney General

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on May 18, 2026.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/ L. Fielding
Legal Secretary
Capital Litigation Sections
400 W. Congress, Bldg. S-215
Tucson, Arizona 85701
Telephone: (520) 628-6520

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| EUGENE ALLEN DOERR, | No. 09-99026 |
| | 10-99007 |
| *Petitioner-Appellant*, | |
| | D.C. No. |
| v. | 2:02-cv-00582- |
| | PGR |
| DAVID SHINN, Director, | |
| | ORDER AND |
| *Respondent-Appellee*. | AMENDED |
| | OPINION |

Appeal from the United States District Court
for the District of Arizona
Paul G. Rosenblatt, District Judge, Presiding

| | |
|---|---|
| EUGENE ALLEN DOERR, | No. 20-99002 |
| | |
| *Petitioner-Appellee*, | D.C. No. |
| v. | 2:02-cv-00582- |
| DAVID SHINN, Director, of the | JJT |
| Arizona Department of Corrections; | |
| CHARLES GOLDSMITH, Warden, | |
| Arizona State Prison - Eyman | |
| Complex, | |
| | |
| *Respondents-Appellants*. | |

2 DOERR V. SHINN

Appeal from the United States District Court
for the District of Arizona
John Joseph Tuchi, District Judge, Presiding

Argued and Submitted May 23, 2024
San Francisco, California

Filed January 29, 2025
Amended May 4, 2026

Before: William A. Fletcher, Danielle J. Forrest, and Holly
A. Thomas, Circuit Judges.

Order;
Opinion by Judge W. Fletcher
Dissent by Judge Forrest

## SUMMARY[*]

### Habeas Corpus / Death Penalty

In Eugene Allen Doerr's appeal from the district court's
partial denial of his federal habeas petition challenging his
death sentence, the panel filed (1) an order (a) amending and
replacing the opinion and dissent filed on January 29, 2025,
and (b) denying as moot Respondents' petition for rehearing
en banc; (2) a superseding amended opinion granting
Doerr's motion to remand to the district court with

---

[*] This summary constitutes no part of the opinion of the court. It has
been prepared by court staff for the convenience of the reader.

instructions to stay and abey the federal petition under *Rhines v. Weber*, 544 U.S. 269 (2005), in order to allow Doerr to present to the state court in a second petition for postconviction relief (PCR) his claim of ineffective assistance of counsel (IAC) at sentencing; and (3) a superseding dissent.

The Supreme Court in *Rhines* approved a stay and abeyance procedure that allows habeas petitioners to exhaust claims in state court that have not previously been presented there, and to do so without dismissing their federal habeas petitions or running afoul of the one-year statute of limitations established by the Antiterrorism and Effective Death Penalty Act of 1996. To obtain a stay and abeyance order under *Rhines*, a federal habeas petitioner must show: (1) there is "good cause for his failure" to present the claim in state court; (2) the claim is "potentially meritorious"; and (3) "there is no indication that the petitioner engaged in intentionally dilatory litigation tactics."

In the superseded opinion, the panel granted Doerr's motion and remanded the case to the district court with instructions to stay and abey his federal habeas petition. Before the mandate issued, the Arizona Supreme Court decided *State v. Traverso*, 576 P.3d 97 (Ariz. 2025), which bears on the analysis in this appeal. The panel issued the amended and superseding opinion, taking *Traverso* into account.

In the amended opinion, the panel held that the *Rhines* criteria are applicable to Doerr's federal habeas petition with respect to his IAC claims at sentencing.

4                               DOERR V. SHINN

- Concerning respondents' contention that Doerr's penalty-phase IAC claim is procedurally barred under Ariz. Crim. P. 32.2(a)(3) and "technically exhausted" in state court, the panel observed that it is not clear whether the Arizona courts would hold that Doerr's penalty-phase IAC claim is precluded under Rule 32.2(a)(3). The panel noted that the Arizona Supreme Court in *Traverso* did not exclude IAC claims contained in second PCR petitions and went out of its way to make clear that a second PCR raising an IAC claim *can* be brought. And as in *Traverso*, *State v. Diaz*, 340 P.3d 1069 (Ariz. 2014), and *State v. Anderson*, 547 P.3d 345 (Ariz. 2024), this case presents what appear to be compelling and unusual circumstances—it is a capital case in which Doerr's trial counsel and first PCR counsel both performed abysmally, and in which an enormous amount of mitigating evidence has never been presented to the Arizona courts. Because the panel could not be sure what an Arizona court will do when asked to entertain Doerr's second PCR petition in which he asserts for the first time an IAC claim at sentencing, principles of comity and federalism counsel against a federal

court substituting its judgment for that of the state courts.

- The panel held that Doerr satisfied all three criteria for his claim of IAC at sentencing: (1) Doerr's failure to present to the state court his claim of IAC at sentencing in his first PCR petition was due to the ignorance or inadvertence of his first PCR counsel, (2) the claim is potentially meritorious, and (3) Doerr has not been intentionally dilatory in seeking a stay and abeyance.

The panel wrote that it erred in its earlier, now superseded, opinion in extending the *Rhines* stay to include Doerr's claim that the Eighth Amendment prohibits his execution under the reasoning of *Atkins v. Virginia*, 536 U.S. 304 (2002). The panel now concluded that Doerr's request for a *Rhines* stay with respect to his *Atkins* claim is best addressed in the first instance by the district court.

Judge Forrest dissented from the court's grant of a *Rhines* stay and would proceed to decide the merits of Doerr's habeas petition. She disagreed with the majority's conclusion that it is unclear whether Arizona courts would deem Doerr's IAC claim procedurally barred. She wrote that, as explained in *Traverso*, the narrow textual exception to Arizona's procedural-default rule for an IAC claim implicating a right of "sufficient constitutional magnitude" does not apply here, nor does the unusual-circumstances exception recognized in *Diaz* and *Anderson*.

6                                DOERR V. SHINN

## COUNSEL

Charlotte G. Merrill (argued) and Amanda Bass Castro Alves, Assistant Federal Public Defenders; Jon M. Sands, Federal Public Defender; Office of the Federal Public Defender for the District of Arizona, Phoenix, Arizona; for Petitioner-Appellee.

Jason P. Gannon (argued), Assistant Attorney General; Jason D. Lewis, Deputy Solicitor General, Section Chief; Capital Litigation Section; Daniel C. Barr, Chief Deputy Attorney General; Kristin K. Mayes, Arizona Attorney General; Office of the Arizona Attorney General, Tucson, Arizona; Ginger Jarvis, Unit Chief Counsel; Jeffrey L. Sparks, Deputy Solicitor General, Section Chief; Capital Litigation Section; Mark Brnovich, Arizona Attorney General; Office of the Arizona Attorney General, Phoenix, Arizona; for Respondents-Appellants.

## ORDER

The opinion and dissent filed on January 29, 2025, and published at *Doerr v. Shinn*, 127 F.4th 1162 (9th Cir. 2025), are amended and replaced with the concurrently filed superseding amended opinion and dissent. The panel therefore unanimously denies Respondents-Appellees/Cross-Appellants' petition for rehearing en banc (Dkt. No. 144) as moot: Judges Forrest and H.A. Thomas have so voted, and Judge Fletcher has so recommended. Further petitions for panel rehearing and rehearing en banc may be filed from the superseding amended opinion and dissent.

## OPINION

W. FLETCHER, Circuit Judge:

In 1996, Eugene Allen Doerr was found guilty by a jury of the kidnaping, sexual assault, and murder of Karen Bohl. An Arizona state court judge sentenced him to death.

After petitioning unsuccessfully for postconviction relief in state court, Doerr filed a federal habeas petition that the district court ultimately granted in part and denied in part. In October 2022, while Doerr's appeal from the partial denial of his federal habeas petition was pending in this court, he moved for a stay and abeyance under *Rhines v. Weber*, 544 U.S. 269 (2005), to allow him to present claims to the state court in a second postconviction petition.

In a prior and now superseded opinion in this appeal, we granted Doerr's motion and remanded this case to the district court with instructions to stay and abey his federal habeas petition. *Doerr v. Shinn* (*Doerr IV*), 127 F.4th 1162 (9th Cir. 2025). Before the mandate issued, the Arizona Supreme Court decided *State v. Traverso*, 576 P.3d 97 (Ariz. 2025), which bears on the analysis in this appeal. We asked the parties to provide supplemental briefing on the effect of *Traverso*. We now issue this amended and superseding opinion, taking *Traverso* into account. For the reasons that follow, we again grant Doerr's motion and remand this case to the district court with instructions to stay and abey his federal habeas petition.

### I. Factual and Procedural Background

In September 1994, two Phoenix police officers responded to a 911 call by Doerr. They found him in his apartment with the body of Karen Bohl, who had been

brutally murdered. *State v. Doerr* (*Doerr I*), 969 P.2d 1168, 1171–72 (Ariz. 1998). Doerr was convicted of Bohl's murder two years later by a Maricopa County jury, and the trial judge sentenced him to death. His conviction and sentence were affirmed by the Arizona Supreme Court in 1998. *Id.* at 1184.

Doerr filed his first petition for postconviction relief ("PCR") in Arizona state court in September 2000. Doerr claimed in the petition that his trial counsel had provided ineffective assistance of counsel ("IAC") during the guilt phase of his trial by failing to challenge the State's evidence that Doerr had premeditated the murder, and by relying instead on a speculative claim that "a third party could have entered the apartment, murdered [Bohl], and injured [Doerr]." *Id.* at 1173. Doerr made no claim in the petition that trial counsel had provided IAC during the sentencing phase of his trial.

In preparing his first PCR petition, Doerr's PCR counsel never met with him and "only corresponded with him via letter," apparently "unaware that Mr. Doerr was unable to read beyond a very basic level." Doerr struggles to spell basic words and write basic sentences. (Examples of his attempts include "I was write to said Hi" and "I was gald to you I hope think are good for you?") Counsel later reported that she had been unaware "that the performance standard for post-conviction attorneys required conducting an independent, thorough investigation of the case in its entirety, including but not limited to sentencing issues." She conducted no interviews and "no independent investigation," and did nothing to develop or present a sentencing-phase IAC claim.

The Arizona trial court dismissed Doerr's first PCR petition, holding that "the evidence at trial made clear that the defendant's intoxication was voluntary and thus cannot be used to rebut or negate the evidence of premeditation." The Arizona Supreme Court denied review in March 2002.

With new counsel, Doerr filed a federal habeas petition the following month. As amended, and as relevant here, Doerr's federal habeas petition claims that his trial counsel provided IAC at sentencing by failing to make a reasonable investigation of mitigating evidence, and by failing to impeach Victor Rosales, a jailhouse informant who testified during the sentencing phase. Doerr also advanced a claim that the Eighth Amendment prohibits his execution under the reasoning of *Atkins v. Virginia*, 536 U.S. 304 (2002).

The district court denied Doerr's federal habeas petition, finding his claim of IAC at sentencing and his *Atkins* claim procedurally defaulted. A procedurally defaulted claim is a claim "that the state court denied based on an adequate and independent state procedural rule." *Davila v. Davis*, 582 U.S. 521, 527 (2017). A petitioner's claim is procedurally defaulted if a state court would refuse to consider the claim "because the prisoner ha[s] failed to meet a state procedural requirement" for presenting the claim. *Coleman v. Thompson*, 501 U.S. 722, 730 (1991). Federal habeas courts ordinarily cannot hear procedurally defaulted claims unless the petitioner shows "cause for the default and actual prejudice as a result of the alleged violation." *Id.* at 750.

The district court held that Doerr's claim of IAC at sentencing was procedurally defaulted because Doerr did not raise the claim in his state PCR petition and because Arizona Rule of Criminal Procedure 32.2(a)(3) generally precludes Arizona courts from hearing postconviction claims that were

or could have been raised in a prior PCR petition. Ariz. R. Crim. P. 32.2(a)(3). Doerr had argued in the district court that any procedural default should be excused because his state PCR counsel performed deficiently in failing to raise the claim that his trial counsel had provided IAC at sentencing. The district court rejected the argument, holding that IAC of state PCR counsel "does not constitute cause to excuse a procedural default." The district court wrote that "[t]he fact that the [PCR] proceeding was Petitioner's first and only opportunity to assert claims of [IAC] at trial and on appeal does not change the analysis." The district court likewise found Doerr's *Atkins* claim procedurally barred since he had not raised the claim in his state PCR proceedings, and it denied a certificate of appealability as to that claim. *Doerr v. Ryan* (*Doerr II*), No. 02-582-PHX-PGR, 2010 WL 582198, at *2–*4 (D. Ariz. Feb. 11, 2010).

Doerr appealed from the district court's denial of his federal habeas petition. While his appeal was pending, the Supreme Court decided *Martinez v. Ryan*, 566 U.S. 1 (2012), holding that IAC by state postconviction counsel is cause to excuse the procedural default during a postconviction proceeding of "a substantial claim of ineffective assistance at trial" if the postconviction proceeding is the petitioner's first opportunity to raise that claim. *Id.* at 17. *Martinez* effectively eliminated the ground upon which the district court had ruled that Doerr's procedural default of his sentencing-phase IAC claim could not be excused. One year after the Supreme Court decided *Martinez*, our circuit held en banc that for "procedurally defaulted claims, to which *Martinez* is applicable," a federal habeas court "should allow discovery and hold an evidentiary hearing where appropriate to determine whether there was 'cause' under *Martinez* for

the state-court procedural default." *Detrich v. Ryan*, 740 F.3d 1237, 1246 (9th Cir. 2013) (en banc).

In an unpublished order we remanded Doerr's federal habeas petition to the district court to allow it to reconsider Doerr's claim of IAC by his postconviction counsel with the benefit of *Martinez* and to allow it to accept new evidence on that issue as authorized by *Detrich*. In a later unpublished order, we expanded the scope of the remand to allow the district court to consider a claim that in sentencing Doerr to death, the Arizona Supreme Court improperly discounted mitigating evidence based on the lack of a "causal nexus" between the mitigating evidence and the crime. *See McKinney v. Ryan*, 813 F.3d 798, 816 (9th Cir. 2015) (en banc).

During the penalty phase of Doerr's trial, his counsel had presented minimal mitigating evidence. On remand from our court, the district court received a great deal of mitigating evidence that had not been presented at sentencing. The evidence included "evaluations from a new set of medical and mental health experts; school records and the complete records from the [Illinois Department of Children and Family Services]; declarations of lay witnesses, including Doerr's sister and ex-wives; . . . and declarations from members of the defense team." *Doerr v. Ryan* (*Doerr III*), No. 02-cv-582, 2021 WL 2826151, at *20 (D. Ariz. July 7, 2021). The evidence included expert reports that Doerr "suffers from 'significant brain injury'" and has an intellectual disability. *Id.* at *21.

The evidence also included declarations challenging testimony that had been provided during the penalty phase by Victor Rosales, a jailhouse informant. Rosales had testified that he had been Doerr's cellmate and that Doerr

had told him about the murder and had "described playing with the victim's blood." The state trial court and the Arizona Supreme Court had both relied on Rosales's testimony—in particular, his testimony describing Doerr as "playing with the victim's blood"—to support one of the aggravating circumstances that justified a death sentence under Arizona law. The Arizona Supreme Court relied on this testimony to conclude that Doerr had "relish[ed]" the murder. *See Doerr I*, 969 P.2d at 1179–80. On remand from our court, Doerr presented to the district court a declaration from Rosales "acknowledg[ing] that he was never Doerr's cellmate" and a declaration from Doerr's actual cellmate that "Rosales read all of Doerr's police reports and paperwork so that he would be able to 'put together a story the prosecution would want' and get a deal in his own case." *Doerr III*, 2021 WL 2826151, at \*21, \*29.

None of the evidence described in the previous two paragraphs had been presented to the state court in connection with Doerr's first PCR petition in state court. After considering this evidence, the district court again denied relief on Doerr's claim of IAC by trial and postconviction counsel. However, it granted relief on Doerr's claim that the Arizona Supreme Court improperly discounted mitigating evidence, contrary to our holding in *McKinney*. *Id.* at \*1, \*56. The district court declined to consider a modified *Atkins* claim that Doerr sought to add to his federal habeas petition, in which Doerr argued that he was ineligible for death due to intellectual disability under *Atkins v. Virginia*, 536 U.S. 304 (2002) and *Hall v. Florida*, 572 U.S. 701 (2014). *Id.* at \*3. The district court held that it could not consider this claim because it fell outside the scope of our post-*Martinez* remand. *Id.*

Doerr appealed from the district court's partial denial of his habeas petition. His arguments on appeal relied on the new sentencing-phase evidence that he presented in the district court following our post-*Martinez* remand.

While Doerr's appeal was pending in our court, the Supreme Court again changed the law. In 2022, the Court held in *Shinn v. Ramirez*, 596 U.S. 366, 382 (2022), that because "state postconviction counsel's ineffective assistance in developing the state-court record is attributed to the prisoner," "a federal habeas court may not conduct an evidentiary hearing or otherwise consider evidence beyond the state-court record based on ineffective assistance of state postconviction counsel." *Ramirez* effectively reversed our decision in *Detrich* that had allowed federal courts to consider evidence, not previously presented in state court, that supports a *Martinez* claim that postconviction counsel had been ineffective.

The holding of *Ramirez* dramatically affected Doerr's ability to litigate his IAC claim in federal court. Under *Ramirez*, the new evidence Doerr presented to the district court in support of his IAC claim could not be considered by the federal district court because it had not first been presented to the state court. *Ramirez* restricts Doerr to the evidence presented in state court in his first state PCR petition even though the evidence that was *not* presented in that court is the basis for his IAC claim. That is, after *Ramirez*, unless Doerr is allowed to bring a second PCR petition in state court presenting the evidence supporting his IAC claim, his IAC claim in federal court will be limited to the evidence that was presented by the state court counsel charged with providing ineffective assistance, despite the fact that the merits of his claim depend on the evidence that this counsel did *not* present.

In order to comply with the requirement of *Ramirez* that evidence in support of his IAC claim be first presented in state court, Doerr moved in our court for a stay and abeyance of his federal habeas petition under *Rhines* so he can return to state court and file a second state PCR petition. Doerr stated that he will present to the state court essentially the same evidence he has already submitted to the federal district court. Doerr also stated that if a stay and abeyance order is granted, he would present to the state court a claim that he is ineligible for the death penalty due to intellectual disability under *Atkins* and *Hall*.

## II.  Discussion

### A.  *Rhines v. Weber*

For the reasons that follow, we conclude that the criteria of *Rhines v. Weber* are applicable to Doerr's federal habeas petition with respect to his IAC claim at sentencing.

The Supreme Court in *Rhines* approved a stay and abeyance procedure that allows habeas petitioners to exhaust claims in state court that had not previously been presented there, and to do so without dismissing their federal habeas petitions. The *Rhines* procedure allows federal habeas petitioners to exhaust such claims without running afoul of the one-year statute of limitations established by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Rhines*, 544 U.S. at 275.

### 1.  IAC Claim at Sentencing

As described above, in his first state PCR petition Doerr was represented by an attorney who never met with him and who conducted no independent investigation. Doerr's first PCR petition claimed IAC only during the guilt phase of his trial. It did not claim IAC during the penalty phase. Doerr

seeks a *Rhines* stay from this court to allow him to present his penalty-phase evidence to state court and, if necessary, to seek review of the state court decision as part of his federal habeas proceeding. We note that Doerr has already, during the pendency of this appeal to our court, filed a second PCR petition in state court.

Provided the *Rhines* criteria are satisfied, the parties agree that a *Rhines* stay and abeyance order is available if Doerr's sentencing-phase IAC claim is unexhausted in state court. However, respondents argue that the claim is "technically exhausted" and that a *Rhines* stay is therefore unavailable. Relying on Arizona Rule of Criminal Procedure 32.2(a)(3), they contend that because Doerr failed to raise his sentencing-phase IAC claim in his first PCR petition, state law bars him from raising it in a second PCR petition. In their view, his claim is thus technically exhausted in state court. *See* Ariz. R. Crim. P. 32.2(a)(3); *Coleman*, 501 U.S. at 732.

Respondents contend that it is clear that Arizona courts, applying Rule 32.2(a)(3), will refuse to entertain a second PCR petition claiming IAC at sentencing. They contend that there is therefore no point in remanding to allow Doerr to file a second PCR petition in state court and to wait for an inevitable dismissal by that court. However, as we discuss below, it is not apparent that the Arizona courts will decline to entertain Doerr's second state PCR petition.

The doctrine of state-court procedural default is based on the principle that federal courts generally "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman*, 501 U.S. at 729. A federal habeas

claim is deemed procedurally defaulted in state court when "the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989) (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985)). That procedural bar must in turn be based on a rule that is "firmly established and regularly followed" by the state courts. *Lee v. Kemna*, 534 U.S. 362, 376 (2002) (quoting *James v. Kentucky*, 446 U.S. 341, 348 (1984)).

The exhaustion doctrine in federal habeas law is "grounded in concerns of comity and federalism." *Coleman*, 501 U.S. at 730. "[I]n a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Id.* at 731. "Because 'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity [for] the state courts to correct a constitutional violation,' federal courts apply the doctrine of comity, which 'teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.'" *Id.* (quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982)); *see also Ramirez*, 596 U.S. at 375–76 ("[O]nly rarely may a federal habeas court hear a claim or consider evidence that a prisoner did not previously present to the state courts in compliance with state procedural rules.").

We have held that a state procedural default rule applies only when "it is clear that the state court would hold the claim procedurally barred." *Franklin v. Johnson*, 290 F.3d 1223, 1230–31 (9th Cir. 2002) (quoting *Harris v. Reed*, 489 U.S. 255, 263 n.9 (1989)); *Cassett v. Stewart*, 406 F.3d 614,

623 (9th Cir. 2005). In the case before us, it is not clear whether the Arizona courts would hold that Doerr's penalty-phase IAC claim is precluded under Rule 32.2(a)(3). Since 2014, the Arizona Supreme Court has decided three cases addressing whether Rule 32.2(a)(3) barred an IAC claim in a successive PCR petition. In all three cases, the Arizona Supreme Court held that it did not. This line of cases, culminating most recently in *State v. Traverso*, 576 P.3d 97 (Ariz. 2025), indicates that "it is not clear that the Arizona courts would hold" that Doerr's claim of IAC at sentencing in a second PCR petition is barred. *Cassett*, 406 F.3d at 623. We describe the three cases in turn.

First, in *State v. Diaz*, 340 P.3d 1069 (Ariz. 2014), the Arizona Supreme Court held that an earlier version of the rule at issue here, Rule 32.2(a)(3), did not apply to an arguably third PCR petition raising an IAC claim. As then written, the Rule "preclude[d] defendants from relief 'based upon any ground . . . waived . . . in any previous collateral proceeding.'" *Id.* at 1070 (quoting Rule 32.2(a)(3)).

Before the filing of the PCR petition at issue in *Diaz*, two previous attorneys had filed notices of intent to submit PCR petitions on Diaz's behalf. The first attorney filed an untimely PCR petition, but the "trial court dismissed the proceeding with prejudice" because it was untimely. *Id.* The second attorney "failed to file a petition after obtaining several extensions of time." *Id.* A third PCR petition was summarily denied by the state trial court as precluded by Rule 32.2(a)(3) on the ground that the IAC claim Diaz sought to raise in the third petition could have been raised in two earlier petitions if they had been timely filed. *See id.*

The Arizona Supreme Court reversed. It held that Rule 32.2(a)(3) did not bar Diaz's third PCR petition, concluding

that Diaz had been "deprived of th[e] opportunity" to assert his IAC claim "through no fault of his own." *Id.* at 1071. The *Diaz* Court wrote:

> [Diaz] timely filed a notice of PCR to raise an IAC claim, but his former PCR attorneys failed to file a petition to enable adjudication of the claim. . . . The petition filed by Diaz's current counsel was the first PCR petition filed on Diaz's behalf. Because Diaz timely filed a notice of PCR seeking to assert an IAC claim, and he was blameless regarding his former attorneys' failures to file an initial PCR petition, we will not deem his IAC claim waived pursuant to Rule 32.2(a)(3).

*Id.* (citation omitted).

Second, in *State v. Anderson*, 547 P.3d 345 (Ariz. 2024), the Arizona Supreme Court excused a PCR petitioner's noncompliance with Rule 32.2(a)(3). The Rule was then in its current form. It had been amended after the Arizona Supreme Court's decision in *Diaz*, incorporating a modified version of an earlier comment to the Rule into the text of the Rule itself. Quoting the amended Rule, the *Anderson* Court wrote:

> A defendant is precluded from PCR under Rule 32.1(a) based on any ground "waived at trial or on appeal, or in any previous post-conviction proceeding, except when the claim raises a violation of a constitutional right that can only be waived knowingly,

> voluntarily, and personally by the defendant." Ariz. R. Crim. P. 32.2(a)(3).

*Id*. at 350.

Anderson filed a successive state PCR petition, claiming that his trial counsel had provided IAC by incorrectly telling him that he would be parole-eligible after twenty-five years if he were found guilty at trial. *Id.* at 348. Relying on that incorrect statement of law, Anderson declined a plea agreement. After more than twenty years in prison, Anderson learned that his attorney's advice had been wrong and that he was not parole-eligible after twenty-five years. *Id.*

The Arizona Court of Appeals held that Anderson's claim was precluded by Rule 32.2(a)(3) because he had failed to raise it in state PCR petitions he filed shortly after he was sentenced. *Id.* at 349. The Arizona Supreme Court reversed. It concluded that, like *Diaz*, "[t]his case also present[ed] unusual, albeit different, circumstances" that merited an exception to preclusion under the Rule. *Id.* at 351. It found that Anderson's noncompliance was caused by two factors outside his control—the fact that his attorney "incorrectly advised him that, if found guilty, he would be eligible for parole," and the evolution of Arizona's parole law during the pendency of his case. *Id.* at 350. While the Arizona legislature had generally eliminated parole for felony offenses in 1993, state appellate courts had continued to hold that felony offenders were eligible for parole until well after Anderson's conviction. *See id.* at 348, 350.

The Arizona Supreme Court noted further that Arizona's Rules of Criminal Procedure excused the untimely filing of a PCR "if the defendant adequately explains why the failure

to timely file a notice was not the defendant's fault." *Id.* at 350 (quoting Ariz. R. Crim. P. 32.4(b)(3)(D)). It excused Anderson's failure to raise his objection to his sentence in his earlier PCRs on that ground as well, concluding that "it would be inequitable to apply Rule 32.2(a)(3)'s preclusion bar to Anderson's parole-misadvice [IAC] claim where the late discovery of the claim's basis would have been excused" by Rule 32.4(b)(3)(D). *Id.* at 351.

Third, in *Traverso*, petitioner Traverso had been indicted on six counts of sexual misconduct with a minor and one count of public indecency to a minor. "On three separate occasions before trial, the State communicated a plea offer to Traverso's trial counsel that provided for a maximum sentence of 27 years." 576 P.3d at 100. Traverso's counsel did not tell him of the offers "until immediately before a pre-trial release hearing, the day before the offer was set to expire." *Id.* Even then, his counsel did not accurately convey the offer and the consequences of rejecting it. He told Traverso only "that the plea offer was for 13 to 27 years," and that the offer was "outrageous." *Id.* He did not tell Traverso that if he rejected the plea and was convicted after a trial he could be sentenced to consecutive terms totaling 163.5 years. *Id.*

At a pre-trial hearing, the prosecutor explained to the court and to Traverso the terms of the plea offer and the consequences of rejecting it. He accurately described the 163.5-year sentence that could be imposed if Traverso were convicted after a trial. *Id.* The judge asked Traverso if he "understood the penalties he would face if convicted at trial." *Id.* Traverso said that he understood. *Id.* at 101.

> The judge then said his understanding was that Traverso "d[id] not want to accept the

> plea," to which Traverso responded "[a]bsolutely not." . . . The court found Traverso had "knowingly, intelligently and voluntarily rejected the State's plea offer."

*Id.* at 101 (alterations in original).

About three months later, on the first day of trial, Traverso asked his counsel how much prison time he faced if convicted. "Traverso related being 'completely shocked' to learn the total possible sentence because his counsel had never discussed the applicable sentences with him and had not explained anything about mandatory or consecutive sentencing." *Id.* Traverso immediately sought to accept the plea offer but was told that it was "no longer on the table." *Id.* After a trial, Traverso was found guilty on all counts and sentenced to 79.5 years in prison. *Id.*

In his first PCR petition, filed in 2009, Traverso's counsel did not present his "plea offer issues . . . [because] she did not consider them as meritorious as the bases for his other claims." *Id.* Eleven years later, in 2020, Traverso sought to file a second PCR petition presenting for the first time an IAC claim based on his trial counsel's failure to advise him of the potential sentence if he rejected the plea offer and went to trial. *Id.* The trial court found that Traverso's claim fell within the exception to preclusion contained in the amended Rule 32.2(a)(3). *Id.* at 102. It ordered that his conviction be set aside and required the State to re-offer the plea agreement. *Id.*

The Arizona Supreme Court affirmed. Before getting to the merits of Traverso's petition, it first addressed a key passage in *Stewart v. Smith*, 46 P.3d 1067 (Ariz. 2002). There, the Arizona Supreme Court had previously written,

in paragraph twelve, that "if a [PCR] petitioner asserts ineffective assistance of counsel at sentencing, and in a later petition asserts ineffective assistance of counsel at trial, *preclusion is required without examining facts*. *The ground of ineffective assistance of counsel cannot be raised repeatedly*." *Id.* at 1071 (emphasis added). In both *Diaz* and *Anderson*, decided after *Stewart*, the Arizona Supreme Court had considered IAC claims in successive PCR petitions despite *Stewart*'s prohibition against doing so. But neither *Diaz* nor *Anderson* addressed, let alone overruled, *Stewart*. In *Traverso*, the Arizona Supreme Court did explicitly what it had done implicitly in *Diaz* and *Anderson*, specifically "disavow[ing] the preclusion language in paragraph 12 of *Stewart*." 576 P.3d at 104.

When we wrote our earlier, now superseded, opinion in this appeal, the statement in paragraph twelve of *Stewart* was still on the books. We recognized that if that statement were good law it would prevent Arizona courts from addressing the merits of Doerr's IAC claim, contained in his second PCR petition. *Doerr IV*, 127 F.4th at 1173. However, in what turned out to be a correct anticipation of the Arizona Supreme Court's ruling in *Traverso*, we disregarded the statement in *Stewart* on the grounds that it was dictum and, more important, that it had not been followed in *Diaz* and *Anderson*. *Id.*

The *Traverso* Court next discussed *Diaz* and *Anderson*. It characterized *Diaz* as not addressing a successive state PCR petition, given that in *Diaz* it had characterized the third PCR petition as the first petition that had actually been filed. *Traverso*, 576 P.2d at 105. The *Traverso* Court recognized that *Anderson* dealt with a second or successive petition, but wrote that at the time of his first PCR petition Anderson did not know the factual basis for his IAC claim and therefore

could not reasonably have been expected to raise it. *Id.* at 107 n.12. Thus, in the view of the *Traverso* Court, "the case did not concern the exception to Rule 32.2(a)(3) and we limit the reasoning and holding of *Anderson* to its facts." *Id.* at 107.

Finally, addressing Traverso's second PCR petition, the Arizona Supreme Court wrote that a second or successive petition is permitted under Rule 32.2(a)(3), but that "[o]nly a narrow category of rights is of sufficient constitutional magnitude to require a defendant's knowing, voluntary, and personal waiver for purposes of Rule 32.2(a)(3)." *Id.* at 105. The *Traverso* Court wrote that such a right is "so inherently personal that it cannot be waived by defense counsel; only the defendant can waive it." *Id.* at 106 (*quoting Stewart*, 46 P.3d at 1070). Such rights include, but are not limited to, "the rights to counsel, to a jury trial, and to a twelve-person jury." *Id.* The *Traverso* Court concluded that the right asserted by Traverso is such a right, holding that "the right to be sufficiently informed of the prosecution's plea offer to decide whether to accept it, plead guilty, and waive a jury trial is of sufficient constitutional magnitude to require the defendant's knowing, voluntary, and personal waiver for purposes of Rule 32.2(a)(3)." *Id.* at 107.

The *Traverso* Court specifically preserved the right to assert IAC claims in a second or successive PCR petition: "Applying *Stewart*'s automatic preclusion for successive IAC claims in conjunction with Rule 32.2(a)(3) would require this Court to ignore the plain text of the only exception provided by the Rule. . . . We decline to do so." *Id.* at 104. However, it added a caution: "We reiterate, though, our admonition that '[o]ur preclusion rules require a defendant to raise all known claims for relief in a single petition to prevent endless trial court reviews of the same

case,' especially involving IAC claims." *Id.* at 107 (quoting *Anderson*, 547 P.3d at 350).

In light of these cases, we cannot be sure what an Arizona court will do when asked to entertain Doerr's second PCR petition in which he asserts for the first time an IAC claim at sentencing. To briefly summarize what we wrote above, Doerr is sentenced to death. His first PCR counsel never met him, conducted no independent investigation, and failed entirely to present to the Arizona courts a claim of IAC of sentencing. His counsel did not merely make an inadequate claim of IAC at sentencing. Rather, his counsel failed to make *any* claim of IAC at sentencing.

If Doerr's first PCR counsel had performed competently, that counsel would would have presented extensive mitigating evidence in support of a claim of IAC at sentencing. It is not mere conjecture that, if permitted to do so, Doerr's state PCR counsel will present such evidence to the Arizona courts in support of a second PCR petition. A second PCR has already been filed, and Doerr's present counsel have available to them all of the evidence that has been presented to the district court.

We recognize that the Arizona Supreme Court cautioned in *Traverso* against "endless trial-court reviews of the same case," especially in cases "involving IAC claims." 576 P.3d at 107. But it did not exclude IAC claims contained in second PCR petitions. Indeed, it went out of its way in *Traverso* to make clear that a second PCR raising an IAC claim *can* be brought. *Traverso* explicitly overruled paragraph twelve in *Stewart*, in which it had previously stated that when a petitioner asserts an IAC claim in one PCR petition and a different IAC claim in a second PCR

petition, "preclusion is required without examining facts." *Stewart*, 46 F.3d at 1071. *Traverso* itself involved an IAC claim. We quote again the relevant language from *Traverso*: "Applying *Stewart*'s automatic preclusion for successive IAC claims in conjunction with Rule 32.2(a)(3) would require this Court to ignore the plain text of the only exception provided by the Rule. . . . We decline to do so." *Traverso*, 576 P.3d at 104.

We put to one side as irrelevant the fact that much, perhaps all, of the evidence that will be presented to the Arizona court has already been the subject of an evidentiary hearing in the district court. To be sure, in order to obtain a *Rhines* stay a petitioner must present to the district court, in some form, enough evidence to satisfy the likelihood-of-success standard set forth in *Cassett*. But our analysis and holding would be the same even if there had been no evidentiary hearing in the district court.

Like *Traverso*, *Diaz*, and *Anderson*, this case presents what appear to us to be compelling and unusual circumstances. It is a capital case in which Doerr's trial counsel and first PCR counsel both performed abysmally, and in which an enormous amount of mitigating evidence has never been presented to the Arizona courts. As noted above, Doerr never met with his first PCR counsel, who entirely failed to advance a penalty-phase IAC claim. Doerr never gave a "knowing, voluntary, and personal waiver" of his right to bring a penalty-phase IAC claim. *Cf. Traverso* 576 P.3d at 107. Arizona courts may conclude that Doerr, like Diaz, was "deprived of th[e] opportunity through no fault of his own." *Diaz*, 340 P.3d at 1071. In this circumstance, Arizona courts may well do what the Arizona Supreme Court did in *Traverso*, *Diaz*, and *Anderson*, and

decline to hold that Rule 32.2(a)(3) precludes a successive PCR petition.

For our purposes, it is enough for Doerr to show that "it is not clear that the Arizona courts would hold" his claim barred. *Cassett*, 406 F.3d at 623. In other words, if it is not clear that the Arizona courts will apply the preclusion bar of Rule 32.2(a)(3), we should not on our own hold that the bar applies. "Principles of comity and federalism counsel against substituting our judgment for that of the state courts." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004), *abrogated on other grounds by Cullen v. Pinholster*, 563 U.S. 170 (2011).

Where, as here, it is unclear how the Arizona courts will decide a question, we will not answer in their place. We will instead permit Doerr to return to state court and allow the state court to provide that answer. As Justice Robert Jackson wrote in a different context, we should ask rather than tell the state court how it will rule on a question of state law. *See Herb v. Pitcairn*, 324 U.S. 117, 127–128 (1945) ("[I]t seems consistent with the respect due the highest courts of states of the Union that they be asked rather than told what they have intended.").

### 2. Second PCR Petition Raising *Atkins* Claim

In our earlier, now superseded, opinion in this appeal, we held that a *Rhines* stay was appropriate not only for Doerr's claim of IAC at sentencing but also for his *Atkins* claim. *See Doerr IV*, 127 F.4th at 1174–75. We now conclude that we erred in extending the *Rhines* stay to include Doerr's *Atkins* claim.

When we earlier remanded to the district court for it to consider the effect of the Supreme Court's decision in

*Ramirez*, we did not mention *Atkins* in our order. The district court therefore declined to address Doerr's *Atkins* claim. The current appeal is from the district court's decision after that remand.

Given this procedural history, we conclude that Doerr's request for a *Rhines* stay with respect to his *Atkins* claim is best addressed in the first instance by the district court. *See Jackson v. Roe*, 425 F.3d 654, 660–61 (9th Cir. 2005).

### B. Application of the *Rhines* Criteria

To obtain a stay and abeyance order under *Rhines*, a federal habeas petitioner must show: (1) there is "good cause for his failure" to present the claim in state court; (2) the claim is "potentially meritorious"; and (3) "there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Rhines*, 544 U.S. at 278.

Doerr has satisfied all three criteria for his claim of IAC at sentencing. First, the good cause requirement of *Rhines* "ensures that a stay and abeyance is available only to those petitioners who have a legitimate reason" for not previously bringing their claims in state court. *Blake v. Baker*, 745 F.3d 977, 982 (9th Cir. 2014). Good cause "does not require a showing of 'extraordinary circumstances.'" *Dixon v. Baker*, 847 F.3d 714, 720 (9th Cir. 2017) (quoting *Jackson*, 425 F.3d at 661–62). Even "[a] petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause'" under *Rhines*. *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005).

We have held "that 'ignorance or inadvertence' on the part of a petitioner's post-conviction counsel" is good cause for a stay and abeyance under *Rhines*. *Dixon*, 847 F.3d at 720–21 (quoting *Coleman*, 501 U.S. at 753–54). Doerr's

failure to present to the state court his claim of IAC at sentencing in his first PCR petition was due to the ignorance or inadvertence of his first PCR counsel. *See Blake*, 745 F.3d at 983 (sufficient showing of IAC where "state post-conviction counsel failed to discover, investigate, and present to the state courts the readily available evidence of Blake's abusive upbringing and compromised mental condition").

Second, a "potentially meritorious" claim under *Rhines* is a claim that is not "plainly meritless." *Rhines*, 544 U.S. at 277–78. The district court issued a certificate of appealability ("COA") after it denied Doerr's claim of IAC at sentencing. We agree with the district court that the COA standard was satisfied. The COA standard is more demanding than the standard under *Rhines*, for a COA may issue only when there has been a "substantial showing of the denial of a constitutional right." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

Third, Doerr has not been intentionally dilatory in seeking a stay and abeyance to present his IAC claim in state court. It is undisputed that he first sought a stay from the district court for this purpose in 2004, long before *Rhines* was decided and just two years after the Arizona Supreme Court denied review of his first state PCR petition. He filed the present motion in our court for a stay and abeyance only a few months after the Supreme Court decided *Ramirez*.

### III. Conclusion

We conclude that Doerr has met the requirements of *Rhines* for stay and abeyance of his federal habeas petition with respect to his claim of IAC at sentencing. We remand to the district court with instructions to stay and abey

consideration of Doerr's habeas petition in order to allow him to present that claim in state court.

**REMANDED.**

---

Forrest, J., dissenting.

Everyone agrees that a *Rhines* stay, which pauses federal habeas proceedings to allow the petitioner presenting both exhausted and unexhausted federal claims to achieve full exhaustion in state court, is permissible only where at least one of the petitioner's claims is truly unexhausted. *See Blake v. Baker*, 745 F.3d 977, 980 (9th Cir. 2014). A *Rhines* stay is not permissible where a claim is technically exhausted because further state-court review is barred. *See Cassett v. Stewart*, 406 F.3d 614, 621 n.5 (9th Cir. 2005). Relying on three Arizona Supreme Court decisions, the majority concludes that Petitioner Eugene Allen Doerr's ineffective-assistance-of-counsel (IAC) claim at issue here is unexhausted because it is unclear whether Arizona courts would deem this claim procedurally barred. I disagree because, as explained in *State v. Traverso*, the narrow textual exception to Arizona's procedural-default rule for an IAC claim implicating a right of "sufficient constitutional magnitude" does not apply here. 576 P.3d 97, 107 (Ariz. 2025). Nor does the unusual-circumstances exception recognized in *State v. Diaz*, 340 P.3d 1069 (Ariz. 2014), and *State v. Anderson*, 547 P.3d 345 (Ariz. 2024). *Traverso*, 576 P.3d at 107 & n.12. For these reasons, I would not revisit our prior denial of a *Rhines* stay and would instead proceed to decide the merits of Doerr's habeas petition.

## I.  *Rhines* Stay

A federal court may not consider a state prisoner's habeas petition unless the petitioner satisfies the total-exhaustion rule by first exhausting all available state-court remedies for each claim raised. 28 U.S.C. § 2254(b)(1)(A); *Rhines v. Weber*, 544 U.S. 269, 274 (2005). When a petitioner presents a mixed habeas petition that contains exhausted and unexhausted claims, a *Rhines* stay allows federal courts to "stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims." *Rhines*, 544 U.S. at 275; *Mena v. Long*, 813 F.3d 907, 912 (9th Cir. 2016). That is, the *Rhines* stay-and-abeyance procedure "allow[s] petitioners to exhaust their unexhausted claims without losing their place in federal court." *Mena*, 813 F.3d at 910. To obtain a *Rhines* stay, a petitioner must show that he "had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Rhines*, 544 U.S. at 278.

A claim is unexhausted if two things are true: the state court has not been given an opportunity to consider the claim *and* the opportunity to present the claim to the state court is still available. *See Gulbrandson v. Ryan*, 738 F.3d 976, 992 (9th Cir. 2013); *Cassett*, 406 F.3d at 621 n.5. A claim that has not been presented to the state court is nonetheless "*technically exhausted* if 'the court to which the petitioner would be required to present [it] in order to meet the exhaustion requirement would now find the claim[] procedurally barred.'" *Gulbrandson*, 738 F.3d at 992 (emphasis added) (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)). A petition that includes only exhausted claims—whether factually or technically—is not a mixed

petition that properly may be stayed under *Rhines*. *See Rhines*, 544 U.S. at 273, 275; *Mena*, 813 F.3d at 908.

As the majority explains, Doerr asserts in his operative amended habeas petition that his sentencing counsel provided ineffective assistance—a claim that he has not presented to the Arizona courts. The question then is whether this is an unexhausted or technically exhausted claim. For this inquiry, we must apply Arizona law.

## II. Arizona's Procedural-Default Rule

Arizona's procedural-default rule precludes any postconviction claim "waived at trial or on appeal, or in any previous post-conviction proceeding." Ariz. R. Crim. P. 32.2(a)(3). "'[A]ll known claims for relief [must be raised] in a single petition to prevent endless trial-court reviews of the same case,' *especially* involving IAC claims." *Traverso*, 576 P.3d at 107 (emphasis added) (quoting *Anderson*, 547 P.3d at 350).

Applying Arizona law, we have routinely held that IAC claims newly raised in federal habeas petitions are procedurally defaulted *and technically exhausted*. *See, e.g.*, *Hurles v. Ryan*, 752 F.3d 768, 779–80 (9th Cir. 2014) (holding that a petitioner's IAC claims were procedurally defaulted because "he failed to raise them before the Arizona Supreme Court" and "[i]f [he] presented the[] IAC claims to the Arizona Supreme Court now, the court would dismiss them as waived"); *Gulbrandson*, 738 F.3d at 993 (denying habeas relief on an IAC claim where the petitioner failed to present the claim to the Arizona state courts and "[i]f he were to do so now, the claim would be procedurally barred" for "fail[ing] to raise it 'in [a] previous collateral proceeding'" (third alteration in original) (citation omitted)).

There are two exceptions to Arizona's procedural-default rule.

## A.  Constitutional-Right Exception

The first exception is embedded in the text of Rule 32.2(a)(3). Procedural default does not apply to a "claim rais[ing] a violation of a constitutional right that can only be waived knowingly, voluntarily, and personally by the defendant." Ariz. R. Crim. P. 32.2(a)(3). Whether a defendant's personal waiver of an IAC claim is required "depends on the particular right implicated by the allegedly ineffective representation." *Traverso*, 576 P.3d at 105 (quoting *Diaz*, 340 P.3d at 1070). The Arizona Supreme Court has instructed that not all constitutional rights trigger the exception because most errors can be waived on the defendant's behalf by counsel not raising them in a postconviction petition. *Id.* "Only a narrow category of rights is of sufficient constitutional magnitude to require a defendant's knowing, voluntary, and personal waiver for purposes" of the procedural-default rule. *Id.* These include, for example, "the rights to counsel, to a jury trial, and to a twelve-person jury." *Id.* at 106.

In *Traverso*, an attorney filed a postconviction petition alleging IAC but did not assert that the defendant's trial counsel had failed to timely communicate the terms and consequences of a plea offer because counsel considered that issue less "meritorious [than] the bases for [the defendant's] other claims." *Id.* at 101. Eleven years later, the defendant filed a second postconviction petition asserting an IAC claim related to the plea offer. *Id.* The defendant argued that his subsequent "IAC claim was not precluded because he did not personally waive [the plea-offer claim] in the prior PCR proceeding." *Id.* The trial court concluded that Rule 32.2 did

not preclude the defendant's successive IAC claim because "'the right to aid of counsel in determining a plea' was 'a constitutional right that can only be waived knowingly, voluntarily, and personally by the defendant.'" *Id.* at 102.

The Arizona Supreme Court affirmed. *Id.* at 108. After clarifying preclusion under Rule 32.2, *id.* at 103–04, the court began its affirmative analysis by explaining that "[w]hether a defendant must personally waive an IAC claim to warrant preclusion under Rule 32.2(a)(3) depends on the particular right implicated by the allegedly ineffective representation." *Id.* at 105 (alteration in original) (quoting *Diaz*, 340 P.3d at 1070). The court explained that "[o]nly a narrow category of rights is of sufficient constitutional magnitude to require a defendant's knowing, voluntary, and personal waiver for purposes of Rule 32.2(a)(3)." *Id.* at 105– 06 (citing *Stewart v. Smith*, 46 P.3d 1067, 1070 (Ariz. 2002) (describing such a right as one "so inherently personal that it cannot be waived by defense counsel; only the defendant can waive it")). And it specified that the relevant question is "whether [the defendant's] IAC claim allege[d] the violation of such a right." *Id.* at 106.

In assessing the "constitutional magnitude" of the right at issue in the successive IAC claim presented in *Traverso*, the Arizona Supreme Court first construed the defendant's argument as having "a right to have his counsel fully inform him of the terms of the plea offer . . . so that he could decide whether to plead guilty and waive a jury trial." *Id.* Agreeing that a defendant has such a right, the court reasoned that this "reflects the fact that '[t]he ultimate decisions on whether to plead guilty, whether to waive jury trial, and whether to testify are to be made by the [defendant].'" *Id.* (alterations in original) (quoting *State v. Lee*, 689 P.2d 153, 158 (Ariz. 1984)). Likewise, the court noted that "whether to accept a

tendered plea offer and plead guilty also implicates a defendant's Sixth Amendment 'right to make his defense,' which 'is personal, and . . . must be honored out of that respect for the individual which is the lifeblood of the law.'" *Id.* (quoting *McCoy v. Louisiana*, 584 U.S. 414, 421 (2018)).

The significance of the defendant's right in this context "underscore[d] the extraordinary nature of counsel's abject failure" to communicate the plea offer's terms and consequences to the defendant. *Id.* at 107. The court explained that "where [defendant]'s counsel offered such paltry information, the right to be sufficiently informed of the prosecution's plea offer to decide whether to accept it, plead guilty, and waive a jury trial is of sufficient constitutional magnitude to require the defendant's knowing, voluntary, and personal waiver for purposes of Rule 32.2(a)(3)." *Id.* at 107. But the court also reiterated that Arizona's "'preclusion rules require a defendant to raise all known claims for relief in a single petition to prevent endless trial-court reviews of the same case,' especially involving IAC claims." *Id.* (quoting *Anderson*, 547 P.3d at 350).

## B.    Unusual-Circumstances Exception

The Arizona Supreme Court has established a second (and narrow) unusual-circumstances exception to procedural default.[1] *See Diaz*, 340 P.3d at 1071; *Anderson*, 547 P.3d at

---

[1] There is some language in *Traverso* that suggests perhaps the two exceptions are not entirely separate as I have described them. *See* 576 P.3d at 106–07 (indicating that the particular circumstances may inform the severity of the constitutional violation). But it also made comments indicating that they are distinct analyses. *See id.* at 105 (explaining *Diaz* was decided based on the conclusion "that no PCR petition asserting an IAC claim has ever been filed . . . [and] there was no need to address the [constitutional] exception to the waiver requirement"); *id.* at 107 n.12

351–52. In *Diaz*, two different attorneys filed a *notice* of postconviction relief on the defendant's behalf, but neither of them followed up and filed a petition. 340 P.3d at 1070. A third attorney did eventually file a petition that included an IAC claim; however, the trial court concluded that the claim was precluded based on the prior initiation of postconviction proceedings. *Id.* The Arizona Supreme Court vacated the trial court's order given the "unusual circumstances" presented in that case. *Id.* at 1071. The court explained that the defendant "was deprived of th[e] opportunity [to assert his claim earlier] through no fault of his own" because his first two attorneys "failed to file a petition to enable adjudication of the claim." *Id.* Crucially, the court disclaimed any conflict with Rule 32.2 because "[p]ermitting [defendant] to file his first petition to assert an IAC claim under the circumstances here will not result in repeated review of the IAC claim; it would result in its first review." *Id.* The court further explained that "[o]nce the petition is adjudicated, and assuming that [the defendant] does not obtain relief, [his pending claim] and all other claims that [he] might have brought will be precluded and [he] will not be able to raise them in a successive petition." *Id.* "Thus, *Diaz* was ultimately decided on the basis that no PCR petition asserting an IAC claim had ever been filed until [Diaz's] third notice of PCR." *Traverso*, 576 P.3d at 105.

Similarly, in *Anderson*, the defendant filed two postconviction petitions alleging IAC. 547 P.3d at 348. Approximately 20 years later, he brought a third IAC claim,

---

(distinguishing *Anderson* as not "concern[ing] the exception to Rule 32.2(a)(3) at issue here" and "limit[ing] the reasoning and holding of *Anderson* to its facts"). As I understand the two inquiries to involve different analytical frameworks, I treat them as two separate exceptions.

alleging "that while he was considering whether to accept a plea agreement to a term of eighteen to twenty-two years in prison, his trial counsel advised him that if he did not accept the plea agreement and was found guilty at trial, parole would be available after he served twenty-five years." *Id.* The defendant went to trial, was found guilty of conspiracy to commit murder, and sentenced to "life without possibility of release until the service of at least 25 years." *Id.* At the time his counsel advised him on the plea offer, parole had been abolished in Arizona for felonies. *Id.* at 352. However, it was not until immediately before the defendant filed his third postconviction petition that he learned he was not parole eligible because when his first two postconviction petitions were filed "defendants, attorneys, and courts did not know of or recognize the error [in counsel's advice] due to the confusion regarding the abolition of parole." *Id.* at 351.

Under these circumstances, the Arizona Supreme Court recognized that trial counsel's faulty advice regarding the plea offer was "less an issue of individual IAC as it was a systemic failure to recognize the effect of the change in the law regarding parole." *Id.* And because of those "unusual circumstances," the court concluded that the defendant's third petition was his first opportunity to raise his previously unknown IAC claim. *Id.* Again, however, the court made clear that it was not displacing or creating a broad exception to the preclusion rule by emphasizing the "extremely rare set of circumstances" presented in that case concerning "the pervasive confusion about parole and the extraordinary remedies . . . fashioned to deal with it." *Id.* at 351–52. So, "[*Anderson*] did not concern" Rule 32.2's constitutional-violation exception. *Traverso*, 576 P.3d at 107.

### III.  Analysis

Despite Arizona's established (and recently clarified) law, the majority posits that it is unclear whether Arizona courts would enforce their procedural-default rule to Doerr's new IAC claim. The majority relies on the three Arizona Supreme Court decisions just described. Respectfully, the majority exaggerates the implication of *Diaz* and *Anderson* and misses the thrust of *Traverso*.

Doerr cannot avail himself of Rule 32.2(a)(3) textual exception because he cannot identify a "particular right" of "sufficient constitutional magnitude" that he can waive only personally. Doerr asserts that his IAC claim implicates a significant constitutional right because "[t]rial counsel's investigation and presentation of mitigating evidence at a capital sentencing proceeding are among the most fundamental aspects of the death penalty's reliability under the Eighth Amendment." Doerr may well have a fundamental right to choose whether to *present* mitigation at sentencing such that he must "knowingly, voluntarily, and personally" waive the ability to make that choice in a postconviction proceeding. *Id.* at 104. But unlike *Traverso*, Doerr's argument here is not that "he had a right to have his counsel fully inform him" about the consequences of waiving presentation of mitigating evidence so he could make an informed decision. *Id.* at 106. Instead, he claims his trial counsel provided ineffective assistance by not *developing* mitigating evidence at the sentencing phase.

The Constitution does not require that a sentencer "be presented with all possibly mitigating evidence in existence." *State v. Montoya*, 554 P.3d 473, 506 (Ariz. 2024). Nor does it provide Doerr the right to direct the strategic decisions around his defense counsel's

"investigation and presentation" of mitigating evidence such that his failure to waive that right in his guilt-phase postconviction proceeding might preserve his ability to bring a separate sentencing-phase IAC claim now. *See New York v. Hill*, 528 U.S. 110, 114–15 (2000). As the *Traverso* court recognized, defendants retain "[t]he ultimate decisions" as to whether to plead guilty, waive a jury trial, and testify. 576 P.3d at 106 (alteration in original) (quoting *Lee*, 689 P.2d at 1258); *see also McCoy*, 584 U.S. at 421–22. But "strategic choices about how best to *achieve* a client's objectives" are for the lawyer to make. *McCoy*, 584 U.S. at 422.

The majority's framing fares no better. The majority asserts that it is unclear whether Arizona would preclude Doerr's immediate claim as procedurally barred because he "never gave a 'knowing, voluntary, and personal waiver' of his right to bring a penalty-phase IAC claim." Maj. Op. at 25. Conspicuously absent from that articulation is the identification of any "particular right implicated by the allegedly ineffective representation." *Traverso*, 576 P.3d at 105. While the Constitution guarantees a defendant "effective assistance of counsel at critical stages," *Lafler v. Cooper*, 566 U.S. 156, 165 (2012), that right is not severable such that Doerr may assert a second IAC claim by construing it as a separate penalty-phase right.

Likewise, the unusual-circumstances exception does not apply here. Doerr's amended petition asserts an IAC claim related to his sentencing proceedings. His original petition filed in September 2000 included an IAC claim challenging his counsel's performance at the guilt phase of trial. The Arizona trial court dismissed the 2000 petition on the merits, concluding that the guilt-phase IAC claim was not colorable. This is exactly the type of adjudication that *Diaz* instructed would preclude a defendant from raising claims in later

petitions that he might have brought in his first petition. 340 P.3d at 1071 (citing *Smith*, 46 P.3d at 1071 ("If the merits were to be examined on each petition, Rule 32.2 would have little preclusive effect and its purpose would be defeated.")). And Doerr's sentencing-phase IAC claim is exactly the type of claim that Arizona law deems waived because it could have been raised in Doerr's first state postconviction petition along with his guilt-phase IAC claim. Ariz. R. Crim. P. 32.2(a)(3); *Traverso*, 576 P.3d at 107.

There are no "unusual" or "rare" circumstances comparable to those in *Diaz* or *Anderson* that warrant displacing Arizona's procedural-default rule. Doerr does not dispute that his sentencing-phase IAC claim was known to him when he filed his state postconviction petition asserting that his trial counsel provided ineffective assistance during the guilt phase of his trial. And there is no basis in the record to conclude that his federal habeas petition filed five years after his sentencing "was the first time he could have reasonably raised" his sentencing-phase IAC claim. *Anderson*, 547 P.3d at 351. Not imposing Rule 32.2's preclusive effect here would undermine its purpose of "requir[ing] a defendant to raise all known claims for relief in a single petition to the trial court, thereby avoiding piecemeal litigation and fostering judicial efficiency." *See id.* (quoting *State v. Petty*, 238 P.3d 637, 641 (Ariz. Ct. App. 2010)).

Taken together, *Diaz* and *Anderson* recognize the possibility of a narrow unusual-circumstances exception to procedural default where the purpose of Rule 32.2 is not served by applying preclusion due to circumstances beyond the defendant's control that prevented presentation of his postconviction claim. *Cf. Traverso*, 576 P.3d at 107. As noted, the Arizona Supreme Court expressly couched its

holdings in these two cases in the specific circumstances that they presented. *Diaz*, 340 P.3d at 1071 ("Our holding in this peculiar scenario does not frustrate Rule 32's preclusion provisions."); *Anderson*, 547 P.3d at 351–52 ("We do not, however, hold Rule 32.1(a)'s exception to the preclusion rule applies broadly to IAC claims based on erroneous advice surrounding plea agreements. Instead, [the defendant]'s claim represents an extremely rare set of circumstances in the context of the pervasive confusion about parole and the extraordinary remedies [the court] and the legislature fashioned to deal with it."). And in *Traverso*, the Arizona Supreme Court confirmed the minimal precedential value of these cases to claims falling under Rule 32.2(a)(3)'s textual exception for constitutional violations. *See Traverso*, 576 P.3d at 105, 107 n.12 ("[W]e limit the reasoning and holding of *Anderson* to its facts."). Therefore, as informed by *Traverso*, a straightforward application of Rule 32.2(a)(3) is called for here.

The majority offers several justifications for concluding that Arizona may not apply procedural default here such that we cannot conclude Doerr's new IAC claim is technically exhausted. All fall short in my view.

First, citing *Traverso*, the majority notes that the Arizona Supreme Court "did not exclude IAC claims contained in second PCR petitions." Maj. Op. at 24. But the majority dwells on *Traverso*'s rule clarification only to neglect its analysis. While *Traverso* indeed disavowed any notion that its previous decision in *Stewart*, 46 P.3d 1067, "automatically preclude[d] . . . successive IAC claim[s]," 576 P.3d at 104, it also counseled that "[o]nly a narrow category of rights is of sufficient constitutional magnitude" to qualify for Rule 32.2's exception, *id.* at 105. Neither the majority nor Doerr has identified such a right.

Second, the majority maintains that we cannot confidently predict what an Arizona court would do with Doerr's claim here because his case "presents what appear . . . to be compelling and unusual circumstances." Maj. Op. at 25. But *Traverso* instructs that while "peculiar" or "extremely rare" circumstances may inform the degree to which a right of "sufficient constitutional magnitude" was violated, such circumstances cannot replace the necessary analysis. *See* 576 P.3d at 106–07. And again, no right of "sufficient constitutional magnitude" has been identified here.

Third, the majority (and Doerr) suggest that it is unclear how Arizona courts would respond to Doerr's sentencing-phase IAC claim because it has not been presented to them. That the Arizona courts have not reviewed Doerr's second petition cannot support a finding of procedural default because the very concept of technical exhaustion requires federal courts to analyze how state courts would handle claims that were *not* presented to them.[2] *See Coleman*, 501 U.S. at 735 n.1; *Gulbrandson*, 738 F.3d at 992. Notably, in *Cassett* we explicitly applied the technical-exhaustion framework in the context of Arizona's Rule 32.2(a)(3). 406 F.3d at 621 n.5. And while *Cassett* instructs us to examine whether it is clear Arizona courts would consider a claim

---

[2] For this reason, the majority's suggestion that "we should ask rather than tell the state court how it will rule on" this issue also stands at odds with our technical-exhaustion caselaw. Maj. Op. at 26. Similarly, the majority's invocation of comity as a basis for not "substituting our judgment for that of the state courts," *id.* (quoting *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004)), is unconvincing because we do not violate comity by applying state law as we find it. *See Vang v. Nevada*, 329 F.3d 1069, 1073 (2003). We do this all the time. And the Arizona Supreme Court has provided clear guidance for us to follow.

precluded, *see id.* at 623, it does not embolden us to create new exceptions to Arizona's preclusion rules that are not grounded in existing caselaw.

Finally, the majority observes that unless Doerr is allowed to return to state court to present new evidence, he will be limited to the evidence presented by the counsel that he contends provided ineffective assistance. This is true. But the Arizona Supreme Court has weighed this concern with other policy considerations and ultimately "rejected an approach to Rule 32 proceedings that would create 'a never-ending tunnel' in which 'defendants could endlessly litigate effectiveness of counsel by claiming that their latest version . . . was not presented on earlier petitions due to counsel's inadequate representation.'" *Anderson*, 547 P.3d at 350–51 (quoting *State v. Mata*, 916 P.2d 1035, 1050 (Ariz. 1996)). Because Rule 32.2(a)(3) requires a defendant to raise all known claims for relief in a single petition, and Doerr's case does not implicate a constitutional right of sufficient magnitude that would require his personal waiver such that an exception is warranted, we must faithfully apply the rule here. *Id.* at 351.

In sum, applying Rule 32.2(a)(3) as construed by Arizona courts leads to the conclusion that Doerr's sentencing-phase IAC claim is procedurally barred, and, therefore, technically exhausted. A *Rhines* stay eliminates timeliness problems only for mixed petitions that include *pending* exhausted and unexhausted federal claims. Because Doerr's petition asserts only exhausted claims, I respectfully dissent from the court's grant of a *Rhines* stay.